**IN THE UNITED STATES DISTRICT
COURT EASTERN DIVISION OF
TENNESSEE GREENVILLE DIVISION**


**JUAN CARLOS CASANOVA, and
wife, JENNY CASANOVA**

             **Plaintiff(s),**

**v.**

**JOHNSON COUNTY, Tennessee,
a governmental entity;**

**EDWARD TESTER, individually,
Johnson County Sheriff;**

**BRADLEY SEXTON, individually,
Johnson County Sheriff's Deputy;**

**QUALITY CORRECTIONAL
HEALTHCARE, INC. (QCH);**

**NURSE MISTY ISSACS, individually,
and as employee and agent of QCH;**

**JOHNSON COUNTY JAIL;**

**JOHNSON COUNTY RESCUE SQUAD
AND EMS;**

**ANDREW WILLIS;**

**JOHN AND JANE DOES, individually,
and as employee(s) of Johnson County or
QCH**

             **Defendant(s).**

**NO. _____**

**JURY DEMANDED**

# COMPLAINT

## Introduction

1.      This case involves an egregious abuse of power and the abuse of basic human dignity to a Latino man who was in desperate need of medical assistance.   Instead of receiving basic human care and decency, the man was arrested, jailed, and denied basic necessities.   He was subject to a false arrest and failed to receive basic care.   Government officials were deliberately indifferent to his needs.   The Sixth Circuit has repeatedly held that a pretrial detainee has a right to adequate medical care when it is obvious that the detainee needs medical attention.   In this case, the plaintiff Juan Carlos Casanova was denied such a right to adequate medical care.

2.      On or about May 2, 2021, Juan Carlos Casanova, age 50, was placed into custody following a single car wreck where multiple Latino individuals were seen outside a vehicle. Mr. Casanova speaks very little, if any, English and no certified Spanish translators were provided at the scene or while he was incarcerated. Mr. C a s a n o v a was then transported  to  Johnson County Jail (JCJ) where he spent approximately two days before being released. He received no medical care for obvious injuries.

3.      Immediately after release, his wife, Jenny Casanova, rushed her husband to Johnson County Community Hospital (JCCH). The hospital staff at Johnson County Community Hospital ordered Mr. Casanova to be transported to Johnson City Medical Center's trauma unit due to the serious nature and extent of his injuries. The lack of medical care provided to Mr. Casanova at the scene and while housed in the Johnson County Jail was professionally and morally reprehensible, a complete failure to adequately treat, monitor, and diagnose resulting in an

exorbitant amount of pain and causing irreparable damage both physically, mentally, and emotionally. This lawsuit seeks to hold Johnson County, Johnson County Sheriff's Department, Sheriff Edward Tester, Deputy Bradley Sexton, Quality C01Tectional Healthcare, Nurse Misty Issacs, John and Jane Does, the parties who jointly through their combined acts of negligence and deliberate indifference, caused Mr. Casanova to be subjected to personal injury, cruel and unusual punishment, medical negligence and violated his rights under the Tennessee and United States Constitution(s).

4.     In that Mr. Casanova was an inmate at JCJ, the Plaintiff's claims are pursuant to the Fourteenth Amendment to the Constitution of the United States. In addition, Plaintiff's claims are made pursuant to the provisions of Tennessee state law, related to medical negligence. Plaintiff's claims also are sound in general negligence under principles of state law.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C § 1343 (civil rights), and 42 U.S.C § 1983 (deprivation of civil rights).

6.     This court has supplemental jurisdiction over any claims brought under Tennessee law pursuant to 28 U.S.C. § 1367, as such claims are so related to claims in the action within the original jurisdiction of this court that they form part of the same case or controversy under Article III of the United State Constitution.

7.     Venue is proper in this district based on 28 U.S.C. § 1391 (b)(2), because the conduct giving rise to Plaintiff's claims occurred in Johnson County, within the Northern Division of the Eastern District of Tennessee.

## COMPLIANCE WITH TENN. CODE ANN.§ 29-26-121, 122

8.      Plaintiff delivered a pre-suit notice letter to Quality Correctional Healthcare and Nurse Misty Issacs via personal service more than sixty (60) days before the filing of this complaint, following the requirements of Tenn. Code Ann. § 29-26-121.

9.      Attached to this complaint as **Exhibit A** is an affidavit(s) of the person(s) who personally served the notices specified in the preceding paragraph, along with copies of the notices.

10.      Attached as **Exhibit B** is a certificate of Good Faith, signed by Plaintiff's counsel, as required by Tenn. Code Ann. § 29-26-122.

## PARTIES

11.      The Plaintiff, Juan Carlos Casanova, is a resident non-citizen of Johnson County, currently residing at 375 Houser Lane, Mountain City, Tennessee 37683.

12.      The Plaintiff, Jenny Casanova, is a citizen of Johnson County, currently residing at 375 Houser Lane, Mountain City, Tem1essee 37683.

13.      The Defendant, Johnson County, Tennessee, ("Johnson County'), is a governmental entity and political subdivision of the State of Tennessee. It may be served through its chief executive officer, Mayor Kenneth Taylor, at 222 West Main Street, Mountain City, Tennessee 37683.

14.      At all times material herein, Johnson County and the Johnson County Sheriff's Office ("JCSO") possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the JCSO, including those individuals charged with protecting and serving the public as Sheriff's Deputies, and to assure that said actions, policies, rules, regulations, practices, and procedures of

the JCSO and its employees and agents comply with the laws and constitutions of the United States and the State of Tennessee.

15.     Defendant, Edward Tester ("Sheriff Tester'), based on information and belief, is a citizen and resident of Johnson County and may be served at 216 Honeysuckle Street, Mountain City, TN 37683. At all times material hereto, Sheriff Tester was the duly elected Sheriff of Johnson County, Tennessee.  Sheriff Tester is sued herein in his individual capacity and as principal on his official bond.  At all times material herein, Sheriff Tester was operating under the color of the law.

16.     At all times material hereto, Sheriff Tester was statutorily responsible for the operation of the Johnson County Sheriff's Department; for the screening, hiring, firing, and training and the supervision of deputies and other employees.

17.     Johnson County and the JCSO acted through their agents, employees, and servants including policymakers, and through Sheriff Tester.

18.     Defendant, Bradley Sexton ("Deputy Sexton"), based upon information and belief, is a citizen and resident of Johnson County and may be served at 216 Honeysuckle Street, Mountain City, TN 37683. At all times material hereto, Deputy Sexton was a Sherriff's Deputy employed by JCSO. Deputy Sexton is sued herein in his individual capacity and as principal on his official bond.  At all times material herein, Deputy Sexton was operating under the color of law.

19.     Various persons or entities not made Defendants in this lawsuit, including but not limited to Johnson County officials, commissioners, or JCSO employees, have participated as co-conspirators with Defendants in the violations ascertained in this Complaint and have performed

acts and made statements in furtherance thereof. Mr. Casanova reserves the right to name some or all of those persons as Defendants at a later date. There is a finite number of co-conspirators, and Mr. Casanova believes that their identities may be ascertained through Defendant's own records.

20.     Sheriff Eddie Tester and Deputy Bradly Sexton, Defendants to this claim, at all times relevant hereto, were acting in their official capacity as Johnson County employees, and their acts or omissions were conducted within the scope of their official duties or employment.

21.     Defendant Quality Correctional Healthcare, Inc. (QCH) is a private, for-profit correctional healthcare corporation, with its corporate headquarters believed to be at 200 Narrows Parkway, Suite A in Birmingham Alabama, doing business in Tennessee.  Upon information and belief, QHC is incorporated in Alabama under the laws of said state. QHC is considered a "person" for purposes of 42 U.S.C § 1983.

22.     At all times relevant to this proceeding, QCH acted under the color of state law in providing medical services to JCJ inmates pursuant to a contact with Johnson County. QCH was responsible for hiring, training, and supervising healthcare professionals at JCJ, including Nurse Misty Issacs named in this action.  QCH also was responsible for adopting, implementing, and enforcing policies and practices pertaining to medical care for JCJ inmates.  QCH had a duty to ensure that the medical care provided to those inmates met the standard of care, the requirements of the United States Constitution and all other legal standards.

## FACTS

23.     On or about May 1, 2021, Deputy Bradley Sexton of the Johnson County Sheriff's Department was on routine patrol.

24.     Officer Sexton was dispatched to a motor vehicle accident, with injuries, at the 600 block of Forge Creek Road.

25.     Upon his arrival, he saw a red Ford Escape SUV in the ditch with heavy front end damage and multiple individuals outside the vehicle.   The Plaintiff, Juan Carlos Casanova, was present, covered in blood, cut, scraped, and in pain.

26.     Officer Sexton made contact with Casanova and effectuated an arrest even though he had little to no evidence that Casanova had operated a motor vehicle.

27.     Casanova was not taken to the hospital despite being in obvious need of medical assistance, but rather transported to the Johnson County Jail.

28.     Casanova was processed and booked into the jail where he spent approximately 48 hours in custody before being released despite being severely injured, in an exorbitant amount of pain, and suffering tremendously.

29.     During Casanova's time in custody, inmates requested medical attention on his behalf realizing his inability to speak English, which went unanswered until just hours before his release.

30.     Casanova did not see any medical professionals in jail until around noon the day of his release.

31.     When Casanova was seen around midday, medical staff did not transport him to the hospital despite obvious injuries and signs of suffering an immense amount of pain.

32.     Upon being released, his wife, Jenny Casanova, was emotionally shaken and fearful for her husband's well-being given his obvious injuries and immediately took him to Johnson County Community Hospital.

33.     Based on the seriousness of his injuries and the lack of proper medical treatment or diagnosis, Johnson County Community hospital transported Mr. Casanova to Johnson City Medical Center's (JCMC) trauma unit.

34.     Upon arrival at JCMC, Casanova demonstrated multiple cervical fracture(s)/ misalignment(s) and a broken right ulna.

35.     Mr. Casanova spent approximately five (5) days in the hospital before discharge. Mr. Casanova has undergone numerous medical procedures and still is receiving healthcare treatment to this day.

## CAUSES OF ACTION

### CAUSE OF ACTION I: VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

36.     Based on the allegations in this complaint, Defendants, Johnson County, Edward Tester, Bradley Sexton, John/Jane Does, Nurse Misty Issacs, and Quality Correctional Healthcare and it's named agents, are liable to the Plaintiff, pursuant to 42 U.S.C. § 1983 for violating the clearly delineated due process rights of Mr. Casanova, recognized under the Fourteenth Amendment to the United States Constitution, by denying him, as a pretrial detainee, constitutionally adequate medical care and treatment in the face of his obviously serious medical needs. All defendants are alleged to have acted in an objectively unreasonable manner and with deliberate indifference to Mr. Casanova's foreseeable risks associated with their actions and failures to act which resulted in Mr. Casanova's unnecessary suffering and possible permanent injuries.

37.     Based on the allegations in this complaint, Defendant(s), by and through the actions of its employees, agents, or servants, are liable under 42 U.S.C. § 1983 for failing to

adequately train and supervise its employees, and for maintaining unconstitutional policies, practices, and customs, resulting in the violation of Mr. Casanova's clearly established Fourteenth Amendment right to adequate medical care and treatment.

## CAUSE OF ACTION II:
## VIOLATION OF THE FOURTH AMENDMENT

38.     The actions of the Defendants, particularly Defendant Sexton, amounted to a false arrest of Mr. Casanova in violation of the Fourth Amendment to the United States Constitution.

39.     Defendants failed to show that Mr. Casanova violated any criminal laws and instead treated him with no dignity and essentially left him to die.

## CAUSE OF ACTION III:
## VIOLATION OF THE EIGHTH AMENDMENT

40.     The Defendants inflicted excessive force upon Mr. Casanova in roughly transporting him to jail.

41.     Plaintiff Mr. Casanova arrived at the jail with many bruises and contusions, some arising from the rough treatment at the hands of the arresting officers.

42.     The Defendants were deliberately indifferent to the basic constitutional rights of Mr. Casanova.

## CAUSE OF ACTION IV:
## VIOLATION OF THE HEALTHCARE LIABILITY ACT

43.     Defendant(s) Nurse Misty Issacs and QCH, are "health care providers" within the meaning of Tenn. Code Ann. § 29-26-101, and they owed a duty to Mr. Casanova to provide him healthcare services in a safe and beneficial manner.

44.     Defendant(s) breached their duties owed to Mr. Casanova causing him to suffer

serious bodily injury as set forth in this Complaint. Such breaches by Defendant(s) include but are not limited to:

a. Failure to provide sufficient numbers of physicians and nurses to meet the custodial needs of Mr. Casanova;

b. Failure to administer the facility in such a manner so as to provide the jail with adequate resources to ensure sufficient staffing and supplies for all inmates;

c. Failure to establish and follow a reasonable plan of care;

d. Failure to provide adequate supervision and oversight to ensure Mr. Casanova received a reasonable plan or care and execution of the same;

e. Failure to provide overall care;

f. Failure to provide adequate and appropriately trained staff and supervision to such personnel so as to ensure Mr. Casanova received proper custodial medical care;

g. Failure to adopt and follow adequate guidelines, policies, and procedures for documenting, maintaining files, investigating and responding to any complaint regarding health of an inmate, the quality of care, or misconduct by Defendant(s) employees;

h. Failure by the Defendants to discharge their legal and lawful obligations by:

    i. Ensuring that the laws, rules, and regulations designed to protect the health and safety of patients, such as Mr. Casanova, as promulgated by the Tennessee Legislature and corresponding regulations implemented by the Tennessee Department of Corrections, and the National Commission on Correctional Healthcare, including but not limited to, Chapter 0880-6 of the Rules of the Tennessee Board of Medical Examiners governing the supervision of nurses by physicians in Tennessee. According to the regulations, a supervisory physician shall be responsible for ensuring compliance with the standard of care. Additionally, the supervising physician shall develop clinical guidelines in collaboration with the nurse to include a method of documentation;

    ii. Ensuring that the inmate care policies for the facility were consistently in compliance on an ongoing basis;

    iii. Responsibly ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate inmate care .

i. Failure of personnel to maintain records in accordance with accepted standards and

practices that are complete, accurately documented, readily accessible, and systematically organized with respect to Mr. Casanova;

j.   Failure to provide basic and necessary medical care and supervision during Mr. Casanova's residency;

k.   Failure to take appropriate measures to prevent the development and progression of Mr. Casanova's broken arm and broken spine.

l.   Failure to protect Mr. Casanova from abuse and neglect during his residency;

m.   Failure to treat Mr. Casanova the same as a person not in custody;

n.   Failure of Defendant(s) to adequately hire, train, supervise, and retain staff so as to assure that Mr. Casanova received care in accordance with Defendant's policies and procedures and the standard of care;

o.   Failure to provide and ensure an adequate care plain including necessary revisions, based on the needs of Mr. Casanova;

p.   Failure to take reasonable steps to prevent, eliminate, and correct medical deficiencies and problems in custodial medical care;

q.   Failure to properly and timely notify supervising medical authorities ofsignificant changes in Mr. Casanova's condition;

r.   Failure to adequately and appropriately monitor Mr. Casanova and recognize significant changes in his health status; and

s.   Failure to provide treatment for persistent, unresolved problems related to the care and physical condition of Mr. Casanova resulting in serious bodily injury, pain, suffering, and potential permanent impairment.

45.     Defendant(s)'s actions failed to meet the recognized and accepted standard of care and professional practice.

46.     Defendant(s)'s conduct in breaching the duties that they owed to Mr. Casanova was negligent, grossly negligent, willful, wanton, malicious, reckless, and/or intentional.

47.     As a direct and proximate result of such negligent, grossly negligent, willful, wanton, malicious, reckless, and/or intentional conduct, Mr. Casanova sustained serious bodily injury for which possible permanent impairment exists, for which Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants, including, but not limited to medical expenses, pain and suffering, mental anguish, and humiliation in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

48.     The injuries described in this Complaint are a direct and proximate result of the acts or omissions set forth above, singularly or collectively.

49.     With respect to any of the acts and omissions alleged in paragraphs 36-41 which may fall outside of the Tennessee Healthcare Liability Act, it is alleged that such acts and omissions constitute negligence under Tennessee state common law. QCH and nurse Misty Issacs owed a duty of ordinary care to Mr. Casanova, they jointly and severally breached such duty and Mr. Casanova's suffering, serious bodily injury, and possible permanent impairment was a proximate result of such breach of duty of ordinary care.

**CAUSE OF ACTION V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

50.     The actions of Defendant in conduct a false arrest, using excessive force, and denying obvious medical care to a pre-trial detainee amount to the tortious conduct of intentional infliction of emotional distress.

51. The actions of Defendants were clearly intentional and reckless.

52. The actions of Defendants amounted to outrageous conduct.

53. The actions of Defendants led the Plaintiffs to suffer severe and significant emotional distress.

## CAUSE OF ACTION VI
## VIOLATION OF Tenn. Const. Art. I, Sec. 13

54. Defendant's conduct constituted "unnecessary rigor" in violation of Tenn. Const. Art. I, Sec. 13.

55. Plaintiffs can pursue remedies for violations of this right under the Tennessee Constitution through Tenn. Code Ann. §1-3-121.

## <u>JURY DEMAND</u>

The Plaintiffs demand a trial by jury.

## <u>REQUEST FOR RELIEF</u>

A. All available compensatory damages up to One Million Dollars ($1,000,000.00), including but not limited to Mr. Casanova's mental and physical pain and suffering, loss of value and enjoyment of his life, pain and suffering caused to Mr. Casanova's wife, Jenny Casanova, and her loss of her husband's love, society, and companionship as allowed by Tenn. Code Ann. § 20-5-113.

B. Punitive damages up to Ten Million Dollars ($10, 000, 000.00);

C. Attorneys' fees and litigation costs under 42 U.S.C. § 1988; and any other relief that the Court deems just and equitable, including remedial and injunctive relief.

Respectfully submitted,

*s/Christopher D. Rogers*
Christopher D. Rogers
CDR Law
207 Academy Street
Elizabethton, TN  37643
Telephone:  423-558-0035
Fax:  423-328-8830
Email:  chris@cdrlawtn.com
BPR 035572

David L. Hudson, Jr.
Belmont Law School
1900 Belmont Blvd.
Nashville, Tenn. 37212
Telephone:  615-429-2883
BPR 016742
davidhusdonjr@gmail.com