IN THE UNITED STATES DISTRICT
COURT EASTERN DIVISION OF
TENNESSEE GREENVILLE DIVISION

| | |
|---|---|
| JUAN CARLOS CASANOVA, and wife, JENNY CASANOVA<br><br>    Plaintiff(s),<br>v.<br><br>JOHNSON COUNTY, Tennessee, a governmental entity;<br><br>EDWARD TESTER, individually, Johnson County Sheriff;<br><br>BRADLEY SEXTON, individually, Johnson County Sheriff's Deputy;<br><br>QUALITY CORRECTIONAL HEALTHCARE, INC. (QCH);<br><br>JOHNSON COUNTY EMERGENCY AND RESCUE SQUAD, INC. (JCEMS) A joint actor entwined with Johnson County providing Governmental services;<br><br>NURSE MISTY ISSACS, individually, and as employee and agent of QCH;<br><br>PARAMEDIC ANDREW WILLIS, individually, and as employee and agent of Johnson County Emergency and Rescue Squad, Inc.<br><br>JOHN AND JANE DOES,<br><br>    Defendant(s). | NO. 2:22-cv-00047<br><br>JURY DEMANDED |

## SECOND AMENDED COMPLAINT

Come the plaintiffs, by and through their counsel of record, and amends the Complaint as follows:

## INTRODUCTION

1. This case involves an egregious abuse of power and the abuse of basic human dignity to a Latino man who was in desperate need of medical assistance. Instead of receiving this basic human care and decency, the man was arrested, jailed, and denied basic necessities. He was subjected to a false arrest and failed to receive necessary and obvious basic care. Government officials were deliberately indifferent to his medical needs. The United States Court of Appeals for the Sixth Circuit has repeatedly held that a pretrial detainee has a right to adequate medical care when it is obvious that the detainee needs medical attention. In this case, the plaintiff Juan Carlos Casanova was denied such a right to adequate medical care.

2. On or about May 2, 2021, Juan Carlos Casanova, age 50, was placed into custody following a single-car wreck where multiple Latino individuals were seen outside a vehicle. Mr. Casanova speaks very little, if any, English, and no certified Spanish translators were provided at the scene or while he was incarcerated. Mr. Casanova was not provided any medical treatment by Johnson County Emergency and Rescue despite being dispatched to a Motor Vehicle Accident (MVA) where at least one Latino male was alleged to be unconscious. Records further state the distance traveled by the responding ambulance equaled .1 miles, which raises doubt on whether Johnson County Emergency and Rescue Squad, INC.(JCEMS) even arrived at the scene. Paramedic Andrew Willis, suspected on knowledge and information, was the paramedic that responded on behalf of JCEMS. Mr. Casanova was then transported to Johnson County Jail (JCJ)

where he spent approximately two days before being released. At the jail, he received no medical care for obviously severe and serious injuries.

3. Immediately after Mr. Casanova's release, his wife, Jenny Casanova, rushed her husband to Johnson County Community Hospital (JCCH). The hospital staff at Johnson County Community Hospital ordered Mr. Casanova to be transported to Johnson City Medical Center's trauma unit due to the serious nature and extent of his injuries. The lack of medical care provided to Mr. Casanova at the scene and while housed in the Johnson County Jail was professionally and morally reprehensible, a complete failure to adequately treat, monitor, and diagnose resulting in Mr. Casanova suffering an exorbitant amount of pain and causing irreparable damage both physically, mentally, and emotionally. This lawsuit seeks to hold Johnson County, Johnson County Sheriff's Department, Sheriff Edward Tester, Deputy Bradley Sexton, Quality Correctional Healthcare, Nurse Misty Issacs, Johnson County Emergency and Rescue Squad, INC., Paramedic Andrew Willis, John and Jane Does, the parties who jointly, through their combined acts of negligence and deliberate indifference, caused Mr. Casanova to be subjected to personal injury, cruel and unusual punishment, medical negligence and violated his rights under the Tennessee and United States Constitution(s).

4. In that Mr. Casanova was an inmate at JCJ, the Plaintiff's claims are pursuant to the Fourteenth Amendment to the Constitution of the United States. In addition, Plaintiff's claims are made pursuant to the provisions of Tennessee state law, related to medical negligence. Plaintiff's claims also are grounded in general negligence under principles of state law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C § 1343 (civil rights), 42 U.S.C § 1983 (deprivation of civil rights) and 42 U.S.C § 1985 (conspiracy to deprive of civil rights).

6. This Court has supplemental jurisdiction over any claims brought under Tennessee law pursuant to 28 U.S.C. § 1367, as such claims are so related to claims in the action within the original jurisdiction of this court that they form part of the same case or controversy under Article III of the United State Constitution.

7. Venue is proper in this district based on 28 U.S.C. § 1391 (b)(2), because the conduct giving rise to Plaintiff's claims occurred in Johnson County, within the Northern Division of the Eastern District of Tennessee.

## COMPLIANCE WITH TENN. CODE ANN.§ 29-26-121, 122

8. Plaintiff delivered a pre-suit notice letter to Quality Correctional Healthcare and Nurse Misty Issacs, Johnson County Emergency and Rescue Squad, INC., and Andrew Willis via personal service more than sixty (60) days before the filing of this complaint, following the requirements of Tenn. Code Ann. § 29-26-121. The affidavit with attachments and the Certificate of Good Faith were attached to the original Complaint as Exhibits A and B.

## PARTIES

9. The Plaintiff, Juan Carlos Casanova, is a resident non-citizen of Johnson County, currently residing at 375 Houser Lane, Mountain City, Tennessee 37683.

10. The Plaintiff, Jenny Casanova, is a citizen of Johnson County, currently residing

at 375 Houser Lane, Mountain City, Tennessee 37683.

11. The Defendant, Johnson County, Tennessee, ("Johnson County'), is a governmental entity and political subdivision of the State of Tennessee. It may be served through its chief executive officer, Mayor Kenneth Taylor, at 222 West Main Street, Mountain City, Tennessee 37683.

12. At all times material herein, Johnson County and the Johnson County Sheriff's Office ("JCSO") possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the JCSO, including those individuals charged with protecting and serving the public as Sheriff's Deputies, and to assure that said actions, policies, rules, regulations, practices, and procedures of the JCSO and its employees and agents comply with the laws and constitutions of the United States and the State of Tennessee.

13. Defendant, Edward Tester ("Sheriff Tester'), based on information and belief, is a citizen and resident of Johnson County and may be served at 216 Honeysuckle Street, Mountain City, TN 37683. At all times material hereto, Sheriff Tester was the duly elected Sheriff of Johnson County, Tennessee. Sheriff Tester is sued herein in his individual capacity and as principal on his official bond. At all times material herein, Sheriff Tester was operating under the color of the law.

14. At all times material hereto, Sheriff Tester was statutorily responsible, under T.C.A § 8-8-201, for the operation of the Johnson County Sheriff's Department; for the screening, hiring, firing, and training and the supervision of deputies and other employees.

15. Johnson County and the JCSO acted through their agents, employees, and

servants including policymakers, and through Sheriff Tester.

16. Defendant Bradley Sexton ("Deputy Sexton"), based upon information and belief, is a citizen and resident of Johnson County and may be served at 216 Honeysuckle Street, Mountain City, TN 37683. At all times material hereto, Deputy Sexton was a Sheriff's Deputy employed by JCSO. Deputy Sexton is sued herein in his individual capacity and as principal on his official bond. At all times material herein, Deputy Sexton was operating under the color of law.

17. Sheriff Eddie Tester and Deputy Bradley Sexton, Defendants to this claim, at all times relevant hereto, were acting in their official capacity as Johnson County employees, and their acts or omissions were conducted within the scope of their official duties or employment.

18. Defendant Quality Correctional Healthcare, Inc. (QCH) is a private, for-profit correctional healthcare corporation, with its corporate headquarters believed to be at 200 Narrows Parkway, Suite A in Birmingham Alabama, doing business in Tennessee. Upon information and belief, QHC is incorporated in Alabama under the laws of said state. QHC is considered a "person" for purposes of 42 U.S.C § 1983. Quality Correctional Healthcare, Inc. is sued in its official and individual capacities pursuant to Tenn. Code Ann. § 29-20-310, as well as having been provided notice of potential action as a health care provider, codified under the Tennessee Health Care Liability Act.

19. At all times relevant to this proceeding, QCH acted under the color of state law in providing medical services to JCJ inmates pursuant to a contact with Johnson County. QCH was responsible for hiring, training, and supervising healthcare professionals at JCJ, including Nurse Misty Issacs named in this action. QCH also was responsible for adopting, implementing, and

enforcing policies and practices pertaining to medical care for JCJ inmates. QCH had a duty to ensure that the medical care provided to those inmates met the standard of care, the requirements of the United States Constitution, the Tennessee Constitution, and all other legal standards.

20. Defendant Misty Isaacs was at all times herein relevant, an employee/contractor of Defendant, Quality Correctional Healthcare, Inc. and as such was acting in the capacity as agent, servant and employee of the Defendants, Quality Correctional Healthcare, Inc. and Johnson County. Misty Isaacs is sued in her official and individual capacities pursuant to Tenn. Code Ann. §29-20-310, as well as having been provided notice of potential action as a health care provider, codified under the Tennessee Health Care Liability Act.

21. At all times relevant to this proceeding, Andrew Willis, was an employee of Johnson County Emergency and Rescue Squad, INC. and acting within his capacity as an agent, servant and employee of the Defendant, Johnson County Rescue Squad and EMS. Andrew Willis is sued in his official and individual capacities pursuant to Tenn. Code Ann. §29-20-310, as well as having been provided notice of potential action as a health care provider, codified under the Tennessee Health Care Liability Act.

22. At all times relevant to this proceeding, Johnson County Emergency and Rescue Squad, INC. acted in providing emergency medical services to citizens of Johnson County and was responsible for hiring, training, and supervising its employees, including Andrew Willis named in this action. Johnson County Emergency and Rescue Squad, INC. is sued in its official, quasi-governmental and individual capacities pursuant to Tenn. Code Ann. §29-20-310, as well as having been provided notice of potential action as a health care provider, codified under the Tennessee Health Care Liability Act.

## CO-CONSPIRATORS

23. Various persons or entities not made Defendants in the lawsuit, including but not limited to Johnson County officials, commissioners, or JCSO employees, have participated as co-conspirators with Defendants in the violations asserted herein and have performed acts and made statements in furtherance thereof. Mr. Casanova reserves the right to name some or all of these persons as Defendants at a later date.

## FACTS

24. On or about May 1, 2021, Deputy Bradley Sexton of the Johnson County Sheriff's Department was on routine patrol.

25. Officer Sexton was dispatched to a motor vehicle accident, with injuries, at the 600 block of Forge Creek Road.

26. Upon his arrival, he saw a red Ford Escape SUV in the ditch with heavy front-end damage and multiple individuals outside the vehicle. The Plaintiff, Juan Carlos Casanova, was present, covered in blood, cut, scraped, and in obvious pain.

27. Officer Sexton made contact with Casanova and effectuated an arrest even though he had little to no direct evidence that Casanova had operated a motor vehicle.

28. Johnson County Emergency and Rescue Squad, INC. was dispatched to an MVA on Forge Creek Road where there was one Latino male reported to be unconscious.

29. Despite one male needing medical attention, there is no record of any treatment by Johnson County Rescue Squad and EMS or Paramedic Andrew Willis, and their own travel log indicates a distance of .1 mile which calls into question whether they even left the station.

30. Casanova was not taken to the hospital despite being in obvious need of medical assistance. Instead, he was transported to the Johnson County Jail after emergency aircraft was called off.

31. Casanova was processed and booked into the jail where he spent approximately 48 hours in custody before being released despite being severely injured, in an exorbitant amount of pain, and suffering tremendously.

32. During Casanova's time in custody, inmates requested medical attention on his behalf, realizing his inability to speak English. These repeated requests for medical assistance from different inmates on Mr. Casanova's behalf went unanswered until just hours before his release.

33. Casanova did not see any medical professionals in jail until around noon the day of his release and remained jailed despite a broken arm and multiple cervical fractures.

34. When Casanova was seen around midday, medical staff did not transport him to the hospital despite obvious injuries and signs of suffering an immense amount of pain.

35. Upon being released, his wife, Jenny Casanova, was emotionally shaken and fearful for her husband's well-being given his obvious injuries and immediately took him to Johnson County Community Hospital.

36. Jail staff, in the presence of a bondsman, instructed Ms. Casanova to immediately take her husband to the emergency room.

37. Based on the seriousness of his injuries and the lack of proper medical treatment or diagnosis, Johnson County Community hospital transported Mr. Casanova to Johnson City Medical Center's (JCMC) trauma unit.

38. Upon arrival at JCMC, Casanova demonstrated multiple cervical fracture(s)/misalignment(s) and a broken right ulna.

39. Mr. Casanova spent approximately five (5) days in the hospital before discharge. Mr. Casanova has undergone numerous medical procedures and still is receiving healthcare treatment to this day.

## WAIVER OF IMMUNITY

40. The County has waived immunity for its own negligence and for its employees, misconduct of officers acting under color of law, and for the negligence of officers, as set out in Tenn. Code Ann. § 29-20-305. There is no immunity for individuals for criminal conduct, or conduct that is willful or malicious.

## CAUSE OF ACTION I: VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

41. Based on the allegations in this complaint, Defendants, Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does, while acting under the color of state law, are liable to the Plaintiff, pursuant to 42 U.S.C. § 1983 for violating the clearly delineated due process rights of Mr. Casanova, recognized under the Fourteenth Amendment to the United States Constitution, by denying him, as a pretrial detainee, constitutionally adequate medical care and treatment in the face of his obviously serious medical needs. These defendants are alleged to have acted in an objectively unreasonable manner and with deliberate indifference to Mr. Casanova's foreseeable risks associated with their actions and failures to act which resulted in Mr. Casanova's unnecessary suffering and possible permanent injuries.

42. Based on the allegations in this complaint, Defendants Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does, by and through the actions of its employees, agents,

or servants, are liable under 42 U.S.C. § 1983 for failing to adequately train and supervise its employees, and for maintaining unconstitutional policies, practices, and customs, resulting in the violation of Mr. Casanova's clearly established Fourteenth Amendment right to adequate medical care and treatment.

## CAUSE OF ACTION II:
## VIOLATION OF THE FOURTH AMENDMENT

43. The actions of the Defendants, while acting under the color of state law, Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does amounted to a false arrest of Mr. Casanova in violation of the Fourth Amendment to the United States Constitution.

44. Defendants Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does failed to show that Mr. Casanova violated any criminal laws and instead treated him with no dignity and essentially left him to die.

## CAUSE OF ACTION III:
## VIOLATION OF THE EIGHTH AMENDMENT

45. The Defendant, Bradley Sexton, inflicted excessive force upon Mr. Casanova in roughly transporting him to jail.

46. Plaintiff Mr. Casanova arrived at the jail with many bruises and contusions, some arising from the rough treatment at the hands of the arresting officers.

47. Plaintiff Mr. Casanova, who was suffering from a broken right arm was handcuffed behind his back and transported to JCJ by Officer Sexton.

48. The Defendants Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does, were deliberately indifferent to the basic constitutional rights of Mr. Casanova.

## CAUSE OF ACTION IV:
## VIOLATION OF 42 U.S. CODE § 1985

49. Based on the allegations in this complaint, Defendants, Johnson County, Edward Tester, Bradley Sexton, and John/Jane Does are liable to the Plaintiff, pursuant to 42 U.S.C. § 1985 for conspiring to interfere with Mr. Casanova's civil rights while acting under the color of state law.

50. Defendants, including but not limited to Officer Sexton, called off emergency aircraft support despite receiving an emergency phone call of one unconscious Latino male identified as Mr. Casanova. He never received any adequate medical treatment, or treatment at all, until released from jail.

51. Defendants also misstated Mr. Casanova's bond status, thus causing a greater delay in medical treatment.

## CAUSE OF ACTION V:
## VIOLATION OF THE HEALTHCARE LIABILITY ACT

52. Defendant(s) Nurse Misty Issacs, QCH, Andrew Willis, and Johnson County Emergency and Rescue Squad, INC. are "health care providers" within the meaning of Tenn. Code Ann. § 29-26-101, and they owed a duty to Mr. Casanova to provide him healthcare services in a safe and beneficial manner.

53. Defendants, Johnson County, Quality Correctional Healthcare, Inc., Andrew Willis, Johnson County Emergency and Rescue Squad, INC., and Misty Issacs, breached their duties owed to Mr. Casanova, causing him to suffer serious bodily injury as set forth in this Complaint. Such breaches by these Defendants include but are not limited to:

a. Failure by Defendant Johnson County to provide sufficient numbers of physicians and nurses to meet the custodial needs of Mr. Casanova;

b. Failure by Defendant Johnson County to administer the facility in such a manner so as to provide the jail with adequate resources to ensure sufficient staffing and supplies for all inmates;

a. Failure to establish and follow a reasonable plan of care;

a. Failure to provide adequate supervision and oversight to ensure Mr. Casanova received a reasonable plan or care and execution of the same;

b. Failure to provide overall care;

c. Failure to provide adequate and appropriately trained staff and supervision to such personnel so as to ensure Mr. Casanova received proper custodial medical care;

d. Failure to adopt and follow adequate guidelines, policies, and procedures for documenting, maintaining files, investigating and responding to any complaint regarding health of an inmate, the quality of care, or misconduct by Defendant(s) employees;

a. Failure to discharge their legal and lawful obligations by:

   i. Ensuring that the laws, rules, and regulations designed to protect the health and safety of patients, such as Mr. Casanova, as promulgated by the Tennessee Legislature and corresponding regulations implemented by the Tennessee Department of Corrections, and the National Commission on Correctional Healthcare, including but not limited to, Chapter 0880-6 of the Rules of the Tennessee Board of Medical Examiners governing the supervision of nurses by physicians in Tennessee. According to the regulations, a supervisory physician shall be responsible for ensuring compliance with the standard of care. Additionally, the supervising physician shall develop clinical guidelines in collaboration with the nurse to include a method of documentation;

   ii. Ensuring that the inmate care policies for the facility were consistently in compliance on an ongoing basis;

   iii. Responsibly ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate inmate care.

   i. Failure of personnel to maintain records in accordance with accepted standards and

practices that are complete, accurately documented, readily accessible, and systematically

organized with respect to Mr. Casanova;

j. Failure to provide basic and necessary medical care and supervision during Mr. Casanova's residency;

k. Failure to take appropriate measures to prevent the development and progression of Mr. Casanova's broken arm and broken spine.

l. Failure by Defendant Johnson County to protect Mr. Casanova from abuse and neglect during his residency;

m. Failure to treat Mr. Casanova the same as a person not in custody;

n. Failure to adequately hire, train, supervise, and retain staff so as to assure that Mr. Casanova received care in accordance with Defendants' policies and procedures and the standard of care;

o. Failure to provide and ensure adequate care plain including necessary revisions, based on the needs of Mr. Casanova;

p. Failure to take reasonable steps to prevent, eliminate, and correct medical deficiencies and problems in custodial medical care;

q. Failure to properly and timely notify supervising medical authorities of significant changes in Mr. Casanova's condition;

r. Failure to adequately and appropriately monitor Mr. Casanova and recognize significant changes in his health status; and

s. Failure to provide treatment for persistent, unresolved problems related to the care and physical condition of Mr. Casanova resulted in serious bodily injury, pain, suffering, and potential permanent impairment.

54. Defendants Quality Correctional Healthcare, Inc., Misty Issacs, Andrew Willis,

and Johnson County Emergency and Rescue Squad, Inc.'s actions failed to meet the recognized and accepted standard of care and professional practice.

55. Defendants, Andrew Willis and Johnson County Emergency and Rescue Squad, Inc., breached their duties owed to Mr. Casanova causing him to suffer serious bodily injury as set forth in this Complaint. Such breaches by these Defendants include but are not limited to:

    a. Failure to examine and/or provide treatment to the Plaintiff;

    b. Failure to assess the extent of the injuries sustained by the Plaintiff;

    c. Failure to transport the Plaintiff to a medical facility for proper evaluation and treatment;

    d. Failure by Defendant Johnson County Emergency and Rescue Squad, INC. to adequately hire, train, supervise, and retain staff so as to assure that Mr. Casanova received care in accordance with Defendant's policies and procedures and the standard of care.

56. The conduct of all named Defendants herein in breaching the duties that they owed to Mr. Casanova was negligent, grossly negligent, willful, wanton, malicious, reckless, and/or intentional.

57. As a direct and proximate result of such negligent, grossly negligent, willful, wanton, malicious, reckless, and/or intentional conduct, Mr. Casanova sustained serious bodily injury for which possible permanent impairment exists, for which Plaintiff asserts a claim for judgment for all compensatory and punitive damages against all Defendants, including, but not limited to medical expenses, pain and suffering, mental anguish, and humiliation in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

58. The injuries described in this Complaint are a direct and proximate result of the

acts or omissions set forth above, singularly or collectively.

59. With respect to any of the acts and omissions alleged in paragraphs 36-41, which may fall outside of the Tennessee Healthcare Liability Act, it is alleged that such acts and omissions constitute negligence under Tennessee state common law. Defendants, QCH, Misty Issacs, Andrew Willis and Johnson County Emergency and Rescue Squad, INC., owed a duty of ordinary care to Mr. Casanova, they jointly and severally breached such duty and Mr. Casanova's suffering, serious bodily injury, and possible permanent impairment was a proximate result of such breach of duty of ordinary care.

## CAUSE OF ACTION VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60. The actions of Defendants, Johnson County, Edward Tester and Bradley Sexton in conducting a false arrest, using excessive force, and denying obvious medical care to a pre-trial detainee amounted to the tortious conduct of intentional infliction of emotional distress.

61. The actions of all named Defendants were clearly intentional and reckless.

62. The actions of all named Defendants amounted to outrageous conduct.

63. The actions of all named Defendants led the Plaintiffs to suffer severe and significant emotional distress.

## CAUSE OF ACTION VII
## VIOLATION OF TENN. CONST. ART. I, SEC. 13

64. The conduct of Defendants, Johnson County, Edward Tester and Bradley Sexton, constituted "unnecessary rigor" in violation of Tenn. Const. Art. I, Sec. 13.

65. Plaintiffs can pursue remedies for violations of this right under the Tennessee Constitution through Tenn. Code Ann. §1-3-121.

## JURY DEMAND

The Plaintiffs demand a trial by jury.

## REQUEST FOR RELIEF

A. All available compensatory damages up to One Million Dollars ($1,000,000.00), including but not limited to Mr. Casanova's mental and physical pain and suffering, loss of value and enjoyment of his life, pain and suffering caused to Mr. Casanova's wife, Jenny Casanova, and her loss of her husband's love, society, and companionship, as allowed by Tenn. Code Ann. § 20-5-113.

B. Punitive damages up to Ten Million Dollars ($10, 000, 000.00);

C. Declare that the actions of the Defendants violated Plaintiffs' rights under the U.S. and Tennessee Constitutions. Such declaratory relief is available for violations of the Tenn. Const. under Tenn. Code Ann. §1-3-121.

D. Attorneys' fees and litigation costs under 42 U.S.C. § 1988; and any other relief that the Court deems just and equitable, including remedial and injunctive relief.

Respectfully submitted,

*s/Christopher D. Rogers*
Christopher D. Rogers
CDR Law
207 Academy Street
Elizabethton, TN  37643
Telephone:  423-558-0035
Fax:  423-328-8830
Email:  chris@cdrlawtn.com
BPR 035572

David L. Hudson, Jr.  
Belmont Law School  
1900 Belmont Blvd.  
Nashville, Tenn. 37212  
Telephone: 615-429-2883  
Email:davidlhudsonjr@gmail.com  
BPR 016742

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on the 20th day of July 2022 a true and exact copy of this Second Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

<u>s/Christopher D. Rogers</u>  
Christopher D. Rogers  
CDR Law  
207 Academy Street  
Elizabethton, TN 37643  
Telephone: 423-558-0035  
Fax: 423-328-8830  
Email: chris@cdrlawtn.com  
BPR 035572